IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Willie J. Huff, #268805 )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>Warden of Lee )<br>Correctional Institution, )<br>)<br>Respondent. )<br>) | Civil Action No.8:08-2058-PMD-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 27.)[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on May 22, 2008.[2] On December 19, 2008, the respondent moved for summary judgment. By order filed December 22, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On January 20, 2009, the petitioner filed a response opposing the respondent's summary judgment motion. Then, on February 25, 2009, the

---

[1]A prisoner's custodian is the only proper respondent in a habeas corpus action. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004). The petitioner has been transferred to the McCormick Correctional Institution (dkt. # 41) and thus the Warden of that institution should be substituted as the respondent.

[2]This filing date reflects that the envelope containing the petition was date stamped as having been received on May 22, 2008, at the Lieber Correctional Institution mailroom. (Pet. Attach. # 2.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

petitioner filed an amended response opposing the respondent's summary judgment motion.

## **PROCEDURAL HISTORY**

The petitioner is currently incarcerated in the McCormick Correctional Institution. In May 2000, the petitioner was indicted for kidnapping and first degree criminal sexual conduct ("CSC"). (App. 537-538; 540-541.)  Rodney Richey represented him on the charges.  On August 9, 2000, the petitioner was given notice of the State's intent to seek a life without parole ("LWOP") sentence under the state recidivist statute. (App. 451; 551.)  The petitioner was tried before a jury on August 22-24, 2000, with the Honorable John W. Kittredge presiding. The jury convicted the petitioner as charged and Judge Kittredge sentenced him to LWOP. (App. 450-451; 462-463.)  The petitioner appealed  his convictions.

On appeal, the petitioner was represented by Katherine Carruth Link.  On February 6, 2002, Link filed a final brief in the South Carolina Court of Appeals raising the following issues:

> 1. Did the court abuse its discretion in refusing to grant a continuance to enable the defense to obtain an independent evaluation of appellant's mental state?
>
> 2. Did the court err in refusing the defense request to excuse a juror who had seen inflammatory media coverage of the trial?
>
> 3. Did the court err in allowing improper bolstering hearsay testimony from a state witness?

(App. 469.)  On November 21, 2002, the South Carolina Court of Appeals affirmed the convictions in an unpublished opinion, *State v. Huff*, 2002-UP-726 (S.C.Ct.App. filed Nov. 21, 2002). (State's Return Attach. # 3.)  The petitioner did not seek review from the Supreme Court of South Carolina. On December 9, 2002, the Court of Appeals sent down the remittitur.  (*Id.* Attach. # 4.)

On January 27, 2003, the petitioner filed an application for post-conviction relief ("PCR") raising the following issue, quoted verbatim: "I was denied psychiatric assistance at the time of my trial, thus causing the state to fine me competant to stand trial for said crimes." (App. 504.)  Wanda L. Adams represented the petitioner and an evidentiary hearing was held on October 23, 2003, before the Honorable Edward W. Miller.  PCR counsel amended the petitioner's application at the hearing to include the following issues: 1) a juror admitted that he had been exposed to pre-trial media coverage and should have been removed from the jury; 2) the police did not read the petitioner his *Miranda* rights prior to taking his confession; 3)  ineffective assistance of counsel for failing to obtain a psychiatric evaluation for the petitioner and failing to object to the juror remaining on the jury; and 4) appellate counsel was ineffective for failing to raise the juror issue in his direct appeal. (App. 513-515; 523; State's Return Attach. # 2.)  On November 19, 2003, the PCR judge issued an order denying the petitioner PCR. (App. 533-536.)   The petitioner appealed.

Assistant Appellate Defender Aileen P. Clare represented the petitioner on his PCR appeal. On June 21, 2004, Clare filed a *Johnson* petition in the Supreme Court of South Carolina  raising the following issue: "Was trial counsel ineffective for failing to obtain an independent mental examination of petitioner?" (State's Return Attach. #  5 - *Johnson* Pet. 2.)  On July 26, 2004, the petitioner also filed a pro se response.  (*Id.* Attach. # 8 - Pro Se Brief.)  The South Carolina Supreme Court transferred the case to the South Carolina Court of Appeals and on October 5, 2007, the South Carolina Court of Appeals denied the petition. (*Id.* Attach. # 10.)  The petitioner did not seek review from the Supreme Court of South Carolina.  On October 23, 2007, the Court of Appeals sent down the remittitur.  (*Id.* Attach. # 11.)

3

On January 24, 2008, the petitioner filed a second PCR application raising twenty grounds for relief, including several claims of ineffective assistance of counsel, a claim that the trial court lacked subject matter jurisdiction, a claim that the trial court erroneously denied a continuance for "mental illness" evidence issues, and a claim that the his prior convictions were erroneously used to "obtain indictment" and in sentencing. (State's Return Attach. # 11.) On May 16, 2008, the Honorable John C. Few issued a conditional order of dismissal expressing the Court's intent to summarily dismiss the application as untimely and successive. (*Id.* Attach. # 13.) On July 11, 2008, the judge issued a final order summarily dismissing the application as untimely and successive and the petitioner did not appeal. (*Id*. Attach. # 14.)

In his amended petition for habeas relief, the petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** I was Denied Psychatric Assistance At the time of my Trial
> **Supporting Facts:** Dr. Crawford testified that I was competent to stand trial for the crimes I committed, but I did not have a second opinion on my psychatric mental state of mind. I argued the trial court abused its discretion in refusing to grant a continuance to enable to obtain an independent evaluation of my mental state.
>
> **Ground Two:** The trial court erred in refusing to grant counsel's motion for a mistrial.
> **Supporting Facts:** One of the jurors had read a article of the Greenville News but stated he saw the lead in headline. But he did not think the articles would affect his ability to be fair. The defense moved to dismiss the juror but he was denied. The counsel moved for a mistrial. But also denied.
>
> **Ground Three:** The trial court erred in admitting bolstering hearsay testimony from a state witness.
> **Supporting Facts:** An officer who responded to the report to this incident testified to the details related by whom be complaining witness arrived at a near by house and after she'd been taken to the hospital. The defense objected (3) times doing the testimony. The Court later sustained the objection.

(Am. Pet. 6-9.)

4

The South Carolina Court of Appeals in its opinion set forth the following facts:

> The victim, an occupational therapist for DHEC Home Health, was the assigned therapist for Huff's two young sons and treated them in their home. The therapy was scheduled for every Thursday at 1:00 p.m.
>
> Generally, the children's mother was present during the therapy session. On Tuesday, November 9, 1999, however, the children's mother paged the victim to reschedule the upcoming therapy session because the children had a medical appointment that Thursday. Because of conflicts in their schedules, they were unable to schedule another session that week.
>
> About fifteen minutes later, Huff paged the victim and notified her "they had worked out the appointment so that at least I could see the baby and he would be there with someone that afternoon at my regular time." When the victim arrived at the house on November 11, 1999, however, only Huff and the baby were present.
>
> The victim testified that, shortly after she began the therapy session, Huff picked up her car keys and put them in his pocket. He also closed the door, locked it, and attempted to grab her. She testified that, when she refused his advances, he pulled out a can of pepper spray and a box cutter. He told her that he would rape her. She testified that he took her to a back bedroom, tied her writs to the bed, and raped her. The baby cried and distracted him, and Huff then untied the rope from the crib and held onto it as he took the victim and the child into the kitchen so she could give the child a bottle.
>
> The victim then told Huff she had money in her vehicle. She also gave hi her watch and informed him she had a cell phone and credit cards and said he could have anything out of her car that he wanted. The victim deliberately informed Huff incorrectly to use the key so that he would activate the car alarm. Huff came back inside and got the victim when the car alarm went off, and she was able to escape once she got outside. She ran to a nearby home, where she called the police.
> . . .

(State's Return Attach. # 3 - *State v. Huff*, 2002 - UP-726 at 2-3.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.

Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 410.

### EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.

The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

    A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the

state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527,

533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met

and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

     D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## **DISCUSSION**

**Ground One**

In Ground One, the petitioner alleges trial court erred in failing to grant him a continuance so that he could obtain a second psychiatric evaluation and opinion regarding his mental health status. Although the petitioner does not allege any federal law violation in his petition, the petitioner alleges in his memorandum opposing the respondent's

summary judgment motion that he was denied his Sixth Amendment rights when the trial court denied him a continuance. (Dkt. # 38 - Pet'r's Am. Mem. Opp. Summ. J. Mot. at 1-2.)

Prior to his trial, the petitioner moved for a continuance so that he could undergo a mental evaluation and possibly raise an insanity defense. The trial judge held a hearing and ruled:

> If there were any basis in the record before me that would in any way support even a remote chance of an insanity plea, I would delay the matter. I would continue the matter. That would work a hardship on the State, but I agree with [trial counsel] that the right of the defendant to a fair trial is paramount, and I would, based on any showing, err on that side, grant the continuance, and try the case at some other time. However, there's nothing in the records before me that bear upon the issue or support a plea of insanity . . .

(App. 80.) The trial judge noted that the petitioner had undergone an evaluation prior to trial, and at five different times in the past, and that the petitioner had been found competent. (App. 31; 44; 79.)[3] The trial court also noted that the petitioner had been receiving disability, but he also noted that the standard for an insanity defense was "a far cry" from the standard of disability. (App. 81.) The trial court also stated that the petitioner had been given an opportunity to whatever evidence he wanted on this issue, but that he presented "absolutely nothing that raises any issue as to insanity." (*Id*.; 81.) The petitioner raised this issue in his direct appeal and the South Carolina Court of Appeals found that the trial court had not abused its discretion in denying the petitioner a continuance. The South

---

[3]The trial court noted that in 1995, the petitioner had been found to be competent and criminally responsible, but he was found to lack the capacity to conform his conduct. (App. 80.) The trial court stated that this finding would not support an insanity defense, only a guilty but mentally ill defense, which he noted the petitioner was free to pursue. (App. 81.) The trial court was correct. A guilty but mentally ill verdict "simply recognizes the continuum in the law regarding mental illness and provides a guide for a jury when considering whether a defendant is not guilty; not guilty by reason of insanity (incapable of determining right from wrong); guilty but mentally ill (incapable of conforming his conduct to the requirements of the law but capable of distinguishing right from wrong); or guilty (suffers no mental illness)." *State v. Hornsby*, 484 S.E.2d 869, 872 (S.C. 1997).

12

Carolina Court of Appeals further stated that the petitioner could not establish prejudice as there was no evidence that the petitioner was ever found incompetent.

As the trial court and South Carolina Court of Appeals noted, there is nothing in the record which would have supported an insanity defense and the petitioner has not put forth any evidence in this habeas action that would have supported an insanity defense. Without such evidence, the petitioner has not shown any prejudice from the trial court's denial of his motion for a continuance.[4] Accordingly, the state court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Two**

In Ground Two, the petitioner alleges the trial court erred in denying him a mistrial based upon a juror's pre-trial reading of a newspaper article headline concerning the petitioner's upcoming trial.

On the second day of the petitioner's trial, the trial court questioned the jurors about whether any of them had been exposed to any media coverage about the case. One juror responded that he had seen a newspaper article about the case. The petitioner moved for a mistrial and the trial court denied it. (App. 198-199.) The trial court then questioned this juror individually. The juror testified that he saw a headline of an article that he thought might have been about the case. He stated he did not read the article. The juror stated

---

[4] In his memorandum, the petitioner alleges that the state's expert was biased and acknowledged that no additional information would change her opinion concerning the petitioner's capacity. (Dkt. # 38 - Pet'r's Am. Mem. Opp. Summ. J. Mot. at 2.) However, the state's expert actually testified that if substantially significant information was brought to her attention, she would look at it and review it. (App. 54-56.) The state's expert was merely testifying that she did not need additional information to render an opinion and she was confident in her report. (App. 62.)

13

that he could serve impartially and be fair to both sides. The trial court instructed the juror not to discuss the article with the other jurors. The petitioner renewed his motion for a mistrial, and the trial court again denied the motion. (App. 202-204.)  Instead, the trial court instructed the jury that they were to avoid media coverage about the case. (App. 206.)

The South Carolina Court of Appeals held that the trial court did not err. The court held that there was no evidence the juror was influenced by the article, and the juror specifically stated the article would not affect his ability to serve as a fair juror. Furthermore, the court noted that the trial court instructed all of the jurors that they were not to expose themselves to any media coverage about the case. (State's Return Attach. # 3 - *State v. Huff*, 2002-UP-726 at 5-6.)

Under the Sixth and Fourteenth Amendments, a criminal defendant is guaranteed a trial by an unbiased jury. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976). A criminal defendant is entitled to a fair trial by a jury of his peers.  This guarantee includes the right to a "panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). Frequently, potential jurors are exposed to pretrial information from the news media about the alleged crime. However, such exposure does not create a presumption that a defendant's right to due process will be denied. *Murphy v. Florida,* 411 U.S. 794 (1975). The trial court must determine through voir dire whether pretrial publicity has resulted in jurors with such fixed opinions that they cannot judge the defendant's case impartially. *Mu' Min v. Virginia,* 500 U.S. 415 (1991).  In this process, jurors are presumed to be impartial, absent clear indication to the contrary. Only in extreme circumstances may prejudice to a defendant's right to a fair trial be presumed from the existence of pretrial publicity itself . . ." *Wells v. Murray*, 831 F.2d 468, 471-472 (4th Cir. 1987)(internal citations omitted).  Jurors need not, however, be totally ignorant of the facts and issues involved in the case.  "It is the defendant's responsibility to demonstrate a strong possibility of jury bias. He must show,

through adequate voir dire, that he was denied his right to a fair trial before a panel of unbiased jurors." *Id*. at 472.

Here, the juror stated he could be impartial and the petitioner has not pointed to any evidence to the contrary. The petitioner has not overcome the presumption of juror impartiality and shown that he was denied a fair trial and due process. Thus, the petitioner has failed to show that the state court's determination is contrary to, or an unreasonable application of, clearly established law or is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

**Ground Three**

In Ground Three, the petitioner alleges the trial court erred in admitting hearsay evidence. Specifically, the petitioner alleges that the trial court erred in allowing a police officer to testify about statements made by the victim when she first escaped and fled to a nearby home. (Am. Pet. at 9.) He contends the officer's testimony improperly bolstered the victim's testimony violating Rules 801 and 802, SCRE. (Dkt. # 38 -Pet'r's Mem. Opp. Summ. J. Mot. a 3-4.)

At the petitioner's trial, Officer Mark Nelson testified that he was the first officer to respond to the victim's call for help within two to three minutes. (PCR App. 320). He found the victim visibly upset, "very disheveled," and "at the point of crying extensively where that you could not understand her speaking." He testified that he saw rope burns on the victim's wrist and that she told him that the petitioner had restrained her to a bed and sexually assaulted her. (App. 320-324 .) Trial counsel objected to Officer Nelson's testimony. The trial court overruled the objection and allowed the testimony under Rule 803(d), SCRE, which provides an exception to the hearsay rule for excited utterances. (App. 322 .) The South Carolina Court of Appeals affirmed and held that because the victim was still under the immediate influence of the assault when she spoke with Officer Nelson, the trial court

15

did not abuse his discretion in admitting the evidence under Rule 803, SCRE. (State's Return Attach. # 3 - *State v. Huff*, 2002 UP-726 at 8.)

This issue is clearly a matter of state law and thus not ordinarily cognizable in a habeas action. Relief in a federal habeas action is only available to petitioners who are in "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Issues of state law are generally not cognizable in habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Evidentiary rulings are generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) (holding "claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). Evidentiary and state procedural issues do not rise to the level of a constitutional violation unless the petitioner can show that the ruling "offends . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977) (citations omitted).

The petitioner fails to allege that the admission of the evidence violated any specific constitutional right or establish that it rendered his trial so fundamentally unfair as to violate due process. *See Estelle v. McGuire,* 502 U.S. 67-68; *see also Burket v. Angelone*, 208 F.3d 172, 186 (2000) (holding federal habeas courts do not review the admissibility of evidence under state law unless rulings were so extreme as to result in denial of constitutionally fair proceeding); *Howard v. Moore,* 131 F.3d 399 415 n. 18 (4th Cir. 1997) (state evidentiary rulings are not cognizable on federal habeas review unless shown to violate fundamental fairness); *Spencer v. Murray,* 5 F.3d 758, 762 (4th Cir. 1993) (holding it is well settled in this Circuit that claims about the admissibility of evidence under state law

16

rarely state a claim upon which habeas relief can be granted). Accordingly, this claim should be dismissed.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 27) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.


                                              s/Bruce Howe Hendricks
                                              United States Magistrate Judge

May 6, 2009
Greenville, South Carolina


**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

>Larry W. Propes, Clerk
>United States District Court
>P.O. Box 10768
>Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).